## S07A1392. BYRUM v. THE STATE.
(652 SE2d 557)

THOMPSON, Justice.
Appellant Siemontray Byrum was convicted of murder and armed robbery in connection with the shooting death of Danny

Tucker.[1] He appeals from the denial of his motion for new trial. Finding no error, we affirm his convictions.

1. Construed to support the verdicts, the evidence showed that on the night of the crimes appellant, Octavius Stready, Michael Shore, and Allison Smith were riding in Shore's truck when Shore and Stready began arguing. Shore stopped the truck, the two men exited the vehicle, and Stready shot Shore in the face. Stready then turned his gun and shot Smith. Shortly after appellant and Stready left the scene in Shore's truck, they were pulled over by Tucker, a community patrol officer. Tucker approached the truck but turned and ran after seeing a gun on Stready's lap. As Tucker attempted to seek cover, Stready fired a shot and missed; appellant, using a different gun, shot Tucker several times, causing his death.

The evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Evidence that appellant fled the scene with Stready in Shore's truck, shot Tucker to avoid being arrested for the earlier crimes, and did not attempt to contact police in the days after the crimes was sufficient to support his conviction for armed robbery. See *Sands v. State*, 262 Ga. 367 (2) (418 SE2d 55) (1992) (criminal intent may be inferred from conduct before, during, and after commission of crime).

2. Appellant's constitutional challenges to the superior court's jurisdiction have been decided against him, see *Davis v. State*, 266 Ga. 801 (10) (471 SE2d 191) (1996), as has his claim that the State was required to indicate in the indictment that it was charging him with armed robbery as a party to a crime. "OCGA § 16-2-21 does not require that one who is a party to the crime be indicted as a party; rather, it provides that one who is a party to the crime may be indicted, convicted and punished for that crime upon proof that he was a party to the crime." *Brinson v. State*, 261 Ga. 884 (1) (413 SE2d 443) (1992). It follows, therefore, that the trial court also did not err

---

[1] The crimes occurred on August 14, 2002. Byrum was indicted by a Fulton County grand jury on September 13, 2002, for three counts of murder, three counts of felony murder, three counts of aggravated assault, and armed robbery. After a jury trial held December 6-15, 2004, the jury returned its verdict finding Byrum guilty of the murder and felony murder of Tucker and the armed robbery of Michael Shore. The felony murder conviction was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). The verdict and sentence of two consecutive life terms of imprisonment were filed on December 16, 2004, and Byrum's motion for new trial, filed on January 11, 2005, and amended May 12, 2006, was denied on September 1, 2006. A notice of appeal was filed on September 27, 2006. The appeal was docketed in this Court on May 25, 2007 and orally argued on September 11, 2007.

by instructing the jury that appellant could be convicted of being a party to the crime of armed robbery. See *Brinson*, supra, 261 Ga. at 884 (1).

3. We find no merit in appellant's contention that Stready's guilty plea precluded the State from charging appellant with the same crimes. OCGA § 16-2-21 does not prohibit the conviction of more than one individual for a crime.

4. During trial, the State called Stready to the stand. Stready testified that he shot all three victims and that appellant had nothing to do with the crimes. When asked whether he remembered telling police after his arrest that appellant shot Tucker, Stready admitted he made the statement but explained that he lied because he thought appellant turned him in to police. Over appellant's objection, the court allowed the State to play Stready's videotaped statement for the jury. Appellant contends it was error to allow the State to impeach Stready with the videotaped statement because Stready did not review the videotape prior to trial.

Before impeaching a witness with a prior inconsistent statement, the cross-examiner must lay the proper foundation with the witness. OCGA § 24-9-83. In laying the foundation,

> the time, place, person, and circumstances attending the former statements shall be called to [the witness'] mind with as much certainty as possible. If the contradictory statements are in writing and in existence, they shall be shown to him or read in his hearing.

Id. "The purpose of the foundation requirement is to give the witness an opportunity to admit, explain, or deny the prior contradictory statement." *Duckworth v. State*, 268 Ga. 566, 567-568 (492 SE2d 201) (1997).

Here, through questioning by the State, Stready confirmed that on the day of his arrest he told police in a videotaped interview that appellant shot Tucker. Stready also testified that he declined the State's offer to review the videotape before trial because "[he] made it." Both the State and defense counsel then questioned Stready about the inconsistencies between his statement to police and his in-court testimony. Under these facts, we find the time, place, and circumstances attending the former statement were established with as much certainty as possible, and the required foundation was made. See *Meschino v. State*, 259 Ga. 611, 613 (2) (385 SE2d 281) (1989) (foundation laid for use of prior inconsistent statements where witness acknowledged making statement to agent after the crime). Although OCGA § 24-9-83 provides that written contradictory statements that are in existence shall be shown or read to the witness,

there is no similar language requiring videotaped statements to be shown to the witness prior to their use for impeachment purposes.

5. Appellant contends that the trial court erred by admitting his statements to police because they were not freely given and because he was not informed of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). It is well established that a trial court's findings as to factual determinations and credibility relating to the admissibility of a statement will be upheld on appeal unless clearly erroneous. *Grier v. State*, 273 Ga. 363, 365 (2) (541 SE2d 369) (2001); *Brown v. State*, 262 Ga. 833 (6) (426 SE2d 559) (1993). Evidence admitted at a *Jackson v. Denno* hearing showed that several days after the crimes, police received information that appellant could be found at a specific apartment complex. Police drove to the complex and appellant, attempting to avoid arrest, dove through the window of a nearby apartment where he was discovered hiding under a mattress. Appellant was placed in a police vehicle and because a crowd was starting to gather, the decision was made to immediately take him to the police station. The commanding officer instructed officers not to ask any questions; however, while being transported, appellant asked the commander why he was being arrested. The commander responded that appellant had just broken into a lady's house. Appellant again asked why he was being arrested, to which the commander responded, "You're probably going to be charged with murder." Appellant proceeded to make several incriminating statements, including a statement in which he confessed to shooting Tucker.

We find no reversible error in the trial court's finding in favor of admissibility. There was no evidence that police engaged in any express questioning of appellant and it cannot be fairly concluded that the commander's response to appellant's question subjected appellant to words or actions that police should have known were reasonably likely to elicit an incriminating response from him.[2] See *Rhode Island v. Innis*, 446 U. S. 291, 301-302 (100 SC 1682, 64 LE2d 297) (1980); *Miranda*, supra; *Walton v. State*, 267 Ga. 713 (4) (482 SE2d 330) (1997) (accused's response to officer's answer to question posed by accused not the product of custodial interrogation). In contrast to the facts in *Missouri v. Seibert*, 542 U. S. 600 (124 SC 2601,

---

[2] Although appellant contends that the admissibility of his statements should be analyzed using the factors set forth in *Riley v. State*, 237 Ga. 124 (226 SE2d 922) (1976), the issue in that case was whether there was a knowing and intelligent waiver of constitutional rights by the defendant. Id. at 128. Here, appellant made voluntary inculpatory statements prior to the point at which *Miranda* warnings were constitutionally required, and the question of whether he knowingly and intelligently waived his rights is not implicated.

159 LE2d 643) (2004), there was no evidence in this case of a plan or design on the part of police to interrogate appellant without first *Mirandizing* him.

6. Even assuming it was error for the State to elicit testimony from a witness that she had seen appellant with a gun, in light of the overwhelming evidence of appellant's guilt, including his own confession, we find the admission of this evidence did not contribute to the verdict. See *Almond v. State*, 274 Ga. 348 (4) (553 SE2d 803) (2001) (relevant evidence of past crime, which supports inference that accused committed charged crime, is admissible, even though it might incidentally impugn his character); *Davis v. State*, 272 Ga. 327, 329 (528 SE2d 800) (2000) ("Gun ownership and the custom of carrying a gun do not, by themselves, impute bad character").

7. Appellant contends trial counsel provided ineffective assistance by failing to evaluate appellant's mental competency prior to trial. In this regard, appellant essentially argues that his cognitive deficiencies rendered him incompetent to stand trial. To prevail on his claim of ineffective assistance, appellant must show that his attorney's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of his trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). He also must overcome the strong presumption that his attorney's conduct fell within the broad range of reasonable professional conduct. Id.

Appellant has failed to meet his burden of proof. The trial record does not demonstrate that appellant's mental competency was or should have been a significant issue at trial and appellant offered no evidence at the motion for new trial hearing supporting his claim that a competency evaluation would have revealed any degree of mental retardation. See *Bergeson v. State*, 272 Ga. 382 (2) (530 SE2d 190) (2000); *Williams v. State*, 258 Ga. 281, 290 (368 SE2d 742) (1988). Accordingly, appellant has shown neither deficient performance nor a reasonable probability that the outcome of his trial would have been different.

8. Appellant also contends counsel was ineffective for failing to introduce evidence of his learning disability and lack of education, claiming this evidence would have altered the court's analysis of the admissibility of his statement under *Riley v. State,* supra. Pretermitting the issue of whether counsel's failure to introduce such evidence was deficient, the *Riley* factors are not applicable in this case and appellant could not have been prejudiced in the manner asserted. See Division 5, fn. 2, supra.

9. We find no merit in appellant's claim that the court violated his rights under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d

215) (1963), and the Sixth Amendment when it failed to conduct an in camera review of an eyewitness' psychiatric records. There was no evidence that the State was in possession of and failed to disclose the witness' psychiatric records as is required to prove a violation of *Brady*. With regard to the Sixth Amendment compulsory process claim, the transcript reveals that defense counsel conceded at trial that there were no known psychiatric records related to the witness. Appellant cannot now complain that the trial court erred by failing to review non-existent records. See *White v. State*, 278 Ga. 355 (2) (602 SE2d 594) (2004) (party cannot complain of error induced by own conduct).

10. We find no abuse of discretion in the trial court's refusal to declare a mistrial after the court instructed the State to refrain from commenting, during closing arguments, on the admissibility of appellant's statements.[3] A trial court's decision not to grant a mistrial based on a prosecutor's improper remarks will not be disturbed on appeal absent a manifest abuse of discretion. *Harrell v. State*, 253 Ga. 474, 476 (321 SE2d 739) (1984). Moreover, a new trial will not be granted unless it is clear that the trial court's curative actions failed to eliminate the improper argument from consideration by the jury. *Watkins v. State*, 237 Ga. 678, 683 (229 SE2d 465) (1976). The court here rebuked the State for its improper legal argument and subsequently provided accurate and adequate instructions explaining to the jury its role in weighing the evidence. Given the limited nature of the State's improper argument and the curative actions taken by the trial court, we cannot say that it was an abuse of discretion to deny the motion for mistrial.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 29, 2007.

*Mark A. Yurachek*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Elizabeth A. Baker, Bettieanne C. Hart*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *David A. Zisook*, Assistant Attorney General, for appellee.

---

[3] The prosecutor twice began arguing that appellant's statements would not have been admitted if the court had found them to be inadmissible. In both instances, defense counsel immediately interrupted the State's argument with an objection and moved for a mistrial.